IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| H.C., *et al.*, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil No. 5:22-cv-01588-JMG |
| | : | |
| HON. BRIAN CHUDZIK, *et al.*, | : | |
| Defendants. | : | |

_____

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                          **March  31, 2023**

Plaintiffs are individuals who were arrested in Lancaster County and then detained pending trial in Lancaster County Prison ("LCP").  Plaintiffs initiated this class action against the Hon. Brian Chudzik ("MDJ Chudzik"), Hon. Edwin Tobin ("MDJ Tobin"), Hon. Miles Bixler ("MDJ Bixler"), and Hon. Andrew LeFever ("MDJ LeFever") in their official capacities as Magisterial District Judges (collectively referred to as "the MDJ's"), defendant Lancaster County and defendant Cheryl Steberger ("Warden Steberger"), in her official capacity as Warden of LCP. Plaintiffs allege violations of Procedural and Substantive Due Process against the MDJ's and Warden Steberger, violations of their Sixth and Fourteenth Amendment Right to Counsel against the MDJ's and Lancaster County, and violations of Equal Protection against the MDJ's and Warden Steberger.  Presently before the Court are Defendants' motions to dismiss the complaint. For the reasons that follow, Defendants' motions are granted in part and denied in part.

## I.     BACKGROUND[1]

### A.  Factual and Legal Background

In Lancaster County, preliminary arraignments are conducted by MDJ's usually within 48 hours of an arrest.  Complaint, ECF No. 1 ("Compl.") at ¶¶ 39–40.  The procedure for preliminary arraignments in Pennsylvania is governed by Rule 540 of the Pennsylvania Rules of Criminal Procedure.  The proceedings may be held via video or in person.  Pa. R. Crim. P. 540(A).   During the preliminary arraignment, MDJ's read the charges against the defendant, inform them of their right to counsel, and make a determination of whether the defendant will be released pending trial and what, if any, bail conditions to impose.  Pa. R. Crim. P. 540(F) – (I); Compl. at ¶¶ 41-42.  A preliminary hearing is also scheduled, which must take place not more than 14 days following the preliminary arraignment if the defendant is incarcerated.  Pa. R. Crim. P. 540(G)(1).  In Lancaster County the criminal defendants usually appear remotely by video for the preliminary arraignments, which are not officially recorded or transcribed, and often last a few minutes at most.  *Id.* at ¶¶ 51–52.  Lancaster County does not appoint counsel to represent indigent defendants during these proceedings.  *Id.* at ¶ 53.

The bail process in Pennsylvania is governed by state constitutional and statutory provisions.  Pursuant to Article 1, Section 14 of the Pennsylvania Constitution, all prisoners are entitled to bail except for capital offenses, offenses for which the maximum sentence is life imprisonment, or, to prisoners for which "no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community."  Pa. Const. art. 1 § 14.  Under the Pennsylvania Rules of Criminal Procedure, when making their

---

[1] On a motion to dismiss, we operate "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

determination on the conditions of release for criminal defendants, MDJ's are required to "[c]onsider all available information as that information is relevant to the defendant's appearance or nonappearance at subsequent proceedings, or compliance or noncompliance with the conditions of the bail bond." Pa. R. Crim. P. 523(A). Such information includes:

(1) the nature of the offense charged and any mitigating or aggravating factors that may bear upon the likelihood of conviction and possible penalty;

(2) the defendant's employment status and history, and financial condition;

(3) the nature of the defendant's family relationships;

(4) the length and nature of the defendant's residence in the community, and any past residences;

(5) the defendant's age, character, reputation, mental condition, and whether addicted to alcohol or drugs;

(6) if the defendant has previously been released on bail, whether he or she appeared as required and complied with the conditions of the bail bond;

(7) whether the defendant has any record of flight to avoid arrest or prosecution, or of escape or attempted escape;

(8) the defendant's prior criminal record;

(9) any use of false identification; and

(10) any other factors relevant to whether the defendant will appear as required and comply with the conditions of the bail bond.

*Id.*

If monetary bail is imposed, a bail authority is required to consider "the financial ability of the defendant" in addition to the criteria set forth in Rule 523. Pa. R. Crim. P. 528(A). Bail is typically imposed in two ways during preliminary arraignments. Bail may be set with a ten percent condition, which requires the criminal defendant post at least ten percent of the imposed bail amount, or as straight bail, which requires payment of the entire bail amount. *Id.* at ¶ 55. Individuals who are able to post the bail amount are released pending trial. *Id.* at ¶ 57. A

criminal defendant can move for bail modification at any time under Rule 529 through either a MDJ or a Court of Common Pleas judge.  Pa. R. Crim. P. 529.  Under the local rules of Lancaster County, a criminal defendant can make a motion under Rule 529 to the "business judge," who is available daily.  Lancaster Cty. R. Crim. P. 529.

Plaintiffs H.C., R.H., C.B., A.D., S.M., D.B., and G.H. were arrested at different times in Lancaster County in early 2022.  They were all brought before the MDJ's for their preliminary arraignments, which took place via video either from LCP or from a police station. Plaintiffs allege they were deprived of their right to counsel at their preliminary arraignments, and that their pre-trial detention, which is based solely on their inability to pay cash bail, has violated and continues to violate their rights to procedural and substantive due process and equal protection.

<u>Plaintiff H.C.</u>

H.C. was arrested on March 19, 2022 for robbery, conspiracy, harassment and driving with a suspended license.  *Id.* at ¶ 171.  He was subsequently taken to LCP.  *Id.* at ¶ 172.  The next day H.C. appeared for his preliminary arraignment via video before MDJ Chudzik.  *Id.* at ¶ 173.  H.C. could not afford private counsel and was not represented by any counsel during his preliminary arraignment.  *Id.* at ¶¶ 173–74.  During the preliminary arraignment, MDJ Chudzik did not ask H.C. any questions, nor did he provide an opportunity for H.C. to speak.  *Id.* at ¶ 179.  H.C. alleges MDJ Chudzik therefore did not possess any information regarding any of the factors set forth in Rule 523.  *Id.* at ¶ 180.  MDJ Chudzik did not ask H.C. questions or give him an opportunity to speak about his risk of flight, any danger to the community, whether he could pay cash bail, and any alternative conditions for release.  *Id.* at ¶ 184.  MDJ Chudzik then set bail at $100,000 in straight cash bail, which would require H.C. to pay the entire sum in order to

be released pending trial. *Id.* at ¶ 185. MDJ Chudzik's stated reason for the amount was the "severity of the crime." *Id.* at ¶ 186. Unable to afford the bail amount, H.C. was incarcerated pending trial. *Id.* at ¶¶ 189–90. H.C.'s bail was subsequently reduced at his preliminary hearing to $50,000. *Id.* at ¶ 197. Still unable to afford the bail, H.C. remained incarcerated pending trial. *Id.* at ¶ 199.

<u>Plaintiff R.H.</u>

R.H. was arrested on March 20, 2022 for possession of a firearm and possession of a controlled substance. *Id.* at ¶ 206. He was taken to LCP, and later that day appeared before MDJ Chudzik for his preliminary arraignment. *Id.* at ¶¶ 206–07. The preliminary arraignment was conducted over video and lasted approximately three minutes. *Id.* at ¶¶ 211–13. R.H. could not afford private counsel and was not represented by any counsel during the proceeding. *Id.* at ¶¶ 208–09. MDJ Chudzik did not ask R.H. if he wanted counsel appointed for the preliminary arraignment. MDJ Chudzik did not ask R.H. any questions regarding the factors in Rule 523. *Id.* at ¶¶ 215, 218. MDJ Chudzik only asked R.H. how long he was a resident of Lancaster. *Id.* at ¶ 216. MDJ Chudzik imposed bail in the amount of $50,000 at 10%, which meant R.H. would be required to pay $5,000 to be released pending trial. *Id.* at ¶ 220. R.H. could not afford this bail and was incarcerated pending trial. *Id.* at ¶ 224.

<u>Plaintiff C.B.</u>

C.B. was arrested for possession of a firearm without a license, robbery, conspiracy, simple assault and disorderly conduct on January 11, 2022. *Id.* at ¶ 233. He was taken to LCP, and the next day appeared before MDJ Tobin for his preliminary arraignment via video. *Id.* at ¶¶ 233–34. C.B. was not represented by any counsel at his preliminary arraignment. *Id.* at ¶ 235. C.B.'s preliminary arraignment lasted approximately one minute. *Id.* at ¶ 237. MDJ

Tobin set bail at $300,000 at 10%, which meant C.B. would be required to pay $30,000 to be released pending trial. *Id.* at ¶ 238. MDJ Tobin did not inquire as to the factors set forth in Rule 523. *Id.* at ¶¶ 241, 244–45. MDJ Tobin did not make any particularized findings as to whether cash bail was required to ensure C.B.'s return to court, whether C.B. had the means to pay bail or whether he was a danger to the community. *Id.* at ¶ 249. C.B.'s bail was later reduced to $250,000 at 10%, which meant he would be required to pay $25,000 to be released pending trial. *Id.* at ¶ 256. C.B. could not afford the bail and remained detained. *Id.*

<u>Plaintiff A.D.</u>

A.D. was arrested on March 29, 2022 after turning himself in for robbery and conspiracy. *Id.* at ¶ 261. Later that day he appeared before MDJ Bixler via video for his preliminary arraignment without any counsel present. *Id.* at ¶¶ 262–63, 265. The preliminary arraignment lasted approximately five minutes. *Id.* at ¶ 266. MDJ Bixler asked A.D. about his residence and employment status. *Id.* at ¶ 269. MDJ Bixler did not inquire as to the factors set forth in Rule 523. *Id.* at ¶¶ 272–73. MDJ Bixler set bail at $15,000 straight bail. *Id.* at ¶ 275. MDJ Bixler did not make any particularized findings as to whether cash bail was required to ensure A.D.'s return to court, whether A.D. had the means to pay bail or whether he was a danger. *Id.* at ¶ 277. As a result of inability to pay the cash bail, A.D. was incarcerated pending trial. *Id.* at ¶ 278.

<u>Plaintiff S.M.</u>

S.M. was arrested on March 29, 2022 for two drug-related charges. *Id.* at ¶ 281. He was then taken to LCP, where he later appeared via video for his preliminary arraignment before MDJ Bixler. *Id.* at ¶¶ 282, 286. S.M. could not afford counsel and was not represented by private counsel at his preliminary arraignment. *Id.* at ¶¶ 283–84. The preliminary arraignment

lasted approximately one minute.  *Id.* at ¶ 287.  MDJ Bixler did not inquire into the factors set

forth in Rule 523 prior to rendering his decision on bail.  *Id.* at ¶¶ 289–90.  Bail was then

imposed in the amount of $30,000 straight bail.  *Id.* at ¶ 293.  MDJ Bixler did not make any

particularized findings as to whether cash bail was required to ensure S.M.'s return to court,

whether S.M. had the means to pay bail or whether he was a danger to the community.  *Id.* at ¶

296.  As a result of inability to pay the cash bail, S.M. was incarcerated pending trial.  *Id.* at ¶

297.

Plaintiff D.B.

On March 29, 2022, D.B. was arrested for various firearm and drug related charges.  *Id.*

at ¶ 304.  Later that day he appeared before MDJ Bixler via video from LCP for his preliminary

arraignment.  *Id.* at ¶¶ 305, 309.  D.B. could not afford counsel and was not represented by

private counsel at his preliminary arraignment.  *Id.* at ¶¶ 306–07.  MDJ Bixler did not inquire

into the factors set forth in Rule 523 prior to rendering his decision on bail.  *Id.* at ¶¶ 311–12.

MDJ Bixler imposed bail in the amount of $2,000,000 straight bail.  *Id.* at ¶ 314.  MDJ Bixler's

stated reason for the bail amount was the nature of the charges against D.B.  *Id.* at ¶ 317.  MDJ

Bixler did not make any particularized findings as to whether cash bail was required to ensure

D.B.'s return to court, whether D.B. had the means to pay bail or whether he was a danger.  *Id.*

at ¶ 316.  As a result of inability to pay the cash bail, D.B. was incarcerated pending trial.  *Id.* at

¶ 318.

Plaintiff G.H.

On April 16, 2022, G.H. was arrested for misdemeanor theft.  *Id.* at ¶ 321.  Police then

took him to Lancaster General Hospital, where he was treated for three days.  *Id.* at ¶¶ 322–23.

After being released from the hospital on April 19, 2022, G.H. contacted police to arrange his

7

self-surrender. *Id.* at ¶ 323. G.H. then went to the police station and appeared before MDJ LeFever for his preliminary arraignment via video. *Id.* at ¶¶ 324–25. His preliminary arraignment lasted less than five minutes. *Id.* at ¶ 330. MDJ LeFever asked G.H. where he resided and why he was in Lancaster. *Id.* at ¶ 332. MDJ LeFever did not inquire into the factors set forth in Rule 523 prior to rendering his decision. *Id.* at ¶¶ 334–35. MDJ LeFever set bail at $5,000 straight bail because G.H. held a Virginia driver's license. *Id.* at ¶ 338. MDJ LeFever did not permit G.H. to speak during the preliminary arraignment. *Id.* at ¶ 339. As a result of his inability to pay the cash bail, G.H. was incarcerated pending trial. *Id.* at ¶ 340.

### B. Procedural History

Plaintiffs filed their complaint on April 25, 2022. On July 18, 2022, defendants Lancaster County and Warden Steberger filed a motion to dismiss. *See* ECF No. 25. That same day defendant MDJ's filed their motion to dismiss. *See* ECF No. 26. Plaintiffs filed their response on September 14, 2022. *See* ECF No. 34. On November 16, 2022, this Court heard oral arguments regarding the motions to dismiss.

## II.   STANDARD

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant

has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  In other words, "there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008).

Third Circuit courts deploy a three-step analysis when faced with motions to dismiss. First, we identify "the elements [the] plaintiff must plead to state a claim." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 675).  Next, we "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, we assume the veracity of well-pleaded factual allegations, "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).  For purposes of this analysis, we "accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

### III.    DISCUSSION

#### A.  Procedural Due Process Claim

In their motion, the MDJ's argue that Plaintiffs have failed to cite a policy or practice that offends the requirements of due process.  In response, Plaintiffs claim they are not required to plead a specific policy or practice – instead they need only show a connection between the actions of the MDJ's and an ongoing violation of federal law under *Ex parte Young*.  *See Ex parte Young*, 209 U.S. 123, 157 (1908).  In her motion, Warden Steberger argues Plaintiffs' claims against her fail because she has no involvement or responsibility in the preliminary arraignment process.  Warden Steberger also argues that Plaintiffs have not overcome the presumption that States have the constitutional authority to regulate police activities pursuant to

the state's rules of criminal procedure.  Plaintiffs contend she is a proper defendant as she executes the MDJ's orders, and that all they must show is a connection between her actions and Plaintiffs' injury.

"Pretrial release and detention decisions implicate a liberty interest—conditional pretrial liberty—that is entitled to procedural due process protections." *Holland v. Rosen*, 895 F.3d 272, 297 (3d Cir. 2018) (citing *United States v. Delker*, 757 F.2d 1390, 1397 (3d Cir. 1985)).  When conducting a procedural due process inquiry, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The Supreme Court has addressed procedural due process claims with a two-step analysis. "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corrs. v. Thompson,* 490 U.S. 454, 460 (1989) (citations omitted); *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

In a procedural due process claim under § 1983, "the constitutional violation actionable [] is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon*, 494 U.S. at 126.  The parties here do not appear to dispute that Plaintiffs have a liberty interest – pretrial liberty – the dispute lies with whether the Plaintiffs' preliminary arraignments were "constitutionally adequate."  *Id.* ("This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.").  While the MDJ's focused their argument on policy and practice, Warden Steberger argues Plaintiffs have failed to overcome the presumption regarding a state's constitutional right

to engage in reasonable regulated police activities.  Her argument assumes the preliminary arraignments comport with the requirements for procedural due process.

With respect to cases involving pre-trial detention, the Supreme Court has held that procedures used must be "adequate to authorize the pretrial detention of at least some [persons] charged with crimes," even if these processes might be found insufficient in other types of cases.  *United States v. Salerno*, 481 U.S. 739, 751 (1987) (alteration in original) (quoting *Schall v. Martin*, 467 U.S. 253, 264 (1984)).  In *Schall*, which involved a New York juvenile detention statute, the Supreme Court addressed this issue with two questions: "First, does preventive detention ... serve a legitimate state objective? And, second, are the procedural safeguards ... adequate to authorize the pretrial detention[?]" 467 U.S. at 263–64 (citations omitted).  As to the first question, courts have found that states have not only a legitimate state objective but a compelling interest in assuring the presence of those accused of crimes at trial. *Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978); *Schultz v. Alabama*, 42 F.4th 1298, 1332 (11th Cir. 2022). The more complex inquiry here, therefore, lies with the second question – are the procedural safeguards utilized by the defendant MDJ's "adequate to authorize the pretrial detention?" *Schall*, 467 U.S. at 263–64.

Under the Pennsylvania Rules of Criminal Procedure, following an arrest a criminal defendant is brought before a judge for a preliminary arraignment.  Pa. R. Crim. P. 540.  In Lancaster County, most arrested individuals appear for their preliminary arraignment via video feed from LCP.  Compl. at ¶ 63.  Plaintiffs allege these preliminary arraignments are held within 48 hours of a defendant's arrest, and in this case Plaintiffs' preliminary arraignments were all held within 24 hours following their arrests.  *See id.* at ¶¶ 40, 171–72, 206–07, 233–34, 261–62, 281–82, 304-05, 323–25.  During the preliminary arraignment, MDJ's read the charges

11

against the defendant, inform them of their right to counsel, and make a determination of

whether the defendant will be released pending trial and what, if any, bail conditions to impose.

Pa. R. Crim. P. 540(F)-(I); Compl. at ¶¶ 41–42.  Under Rule 523 of the Pennsylvania Rules of

Criminal Procedure, in making their determination on the release conditions for the defendants,

judges and in this case the MDJ's are required to "[C]onsider all available information as that

information is relevant to the defendant's appearance or nonappearance at subsequent

proceedings, or compliance or noncompliance with the conditions of the bail bond."  Pa. R.

Crim. P. 523(A).  Such information includes:

> (1) the nature of the offense charged and any mitigating or aggravating factors that may bear upon the likelihood of conviction and possible penalty;
>
> (2) the defendant's employment status and history, and financial condition;
>
> (3) the nature of the defendant's family relationships;
>
> (4) the length and nature of the defendant's residence in the community, and any past residences;
>
> (5) the defendant's age, character, reputation, mental condition, and whether addicted to alcohol or drugs;
>
> (6) if the defendant has previously been released on bail, whether he or she appeared as required and complied with the conditions of the bail bond;
>
> (7) whether the defendant has any record of flight to avoid arrest or prosecution, or of escape or attempted escape;
>
> (8) the defendant's prior criminal record;
>
> (9) any use of false identification; and
>
> (10) any other factors relevant to whether the defendant will appear as required and comply with the conditions of the bail bond.

*Id.*  If bail conditions are imposed, said bail may be modified at any time by a MDJ or a judge in

the Court of Common Pleas.  Pa.R. Crim.P. 529.  Under the Lancaster County Local Rules, a

motion for bail modification may be filed with the daily business judge.  Lancaster Cty.R. Crim.

P. 529.  The MDJ's contend that under these rules the motions may be heard by the business judge the day following the filing.  Individuals detained pre-trial can also challenge their bail conditions at their preliminary hearing.  Under the Pennsylvania Rules of Criminal Procedure a preliminary hearing must be scheduled for not more than 14 days following a defendant's preliminary arraignment if they are in custody pending the hearing.  Pa. R. Crim. P. 540(G)(1).  In her motion, Warden Steberger avers that the preliminary hearings usually take place between three and ten days following the preliminary arraignment.  In their complaint, Plaintiffs allege preliminary hearings are often postponed longer than the 14 day requirement for pre-trial detainees.

As summarized above, Plaintiffs allege defendant MDJ's deny any meaningful opportunity to be heard when they fail to consider factors laid out in Rule 523, even as this information is crucial in determining whether a defendant is a flight risk, a danger to the community, has the ability to pay bail, or if there are less-restrictive means available for a defendant's release.  Plaintiffs also allege that defendant MDJ's do not ask questions regarding these factors during the preliminary arraignments, and often do not permit defendants to speak during the proceedings.

The MDJ's argue Plaintiffs' procedural due process claims fail because they do not point to a practice or policy under which the MDJ's have failed to comply with due process, and instead have only selected isolated incidents out of hundreds of arraignments the MDJ's conduct on a yearly basis.  The MDJ's thus argue that the small number of preliminary arraignments cited in Plaintiffs' complaint do not amount to a practice or policy.  *See Losch v. Parkesburg*, 736 F.2d 903, 911 (3d Cir. 1984); *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *Davila v. Northern Regional Joint Police Bd.*, 370 F.Supp.3d 498, 540-41 (W.D. Pa.

2019).  Plaintiffs rightfully point out these cases cited by the MDJ's were all decided within the context of a *Monell* claim, and Plaintiffs have not asserted a *Monell* claim against the MDJ's. Moreover, Plaintiffs allege MDJ's ordered them detained pending trial after imposing unaffordable cash bail without constitutional or legally required procedural protections.  Each plaintiff provides specific facts regarding their preliminary arraignment, and in some instances allege they were not permitted to speak, and that the MDJ's did not ask questions regarding the mandatory factors set out in Rule 523.  At this stage Plaintiffs have plead sufficient facts giving rise to a plausible inference that the procedural safeguards set utilized by the defendant MDJ's are not "adequate to authorize [their] pre-trial detention."  *See Schall*, 467 U.S. at 263–64. Accordingly, defendant MDJ's motion to dismiss Count I of the complaint is denied.

       With respect to Warden Steberger's motion, she argues she is not a proper defendant because she has no responsibility or involvement in the preliminary arraignments, nor in the decision making of the judges.  Plaintiffs claim that under the *Ex parte Young* exception, they need only show a connection between the Warden's actions and their constitutional injury.  In *Ex parte Young*, the Supreme Court held that a state officer could be sued in an action challenging the constitutionality of a state law if the state officer, "by virtue of his office, has some connection with the enforcement of the act."  209 U.S. at 157.  The defendant in *Ex parte Young* was the attorney general for Minnesota, who had the authority to bring a civil action to enforce a state law governing rail rates that was alleged to be unconstitutional.  *Id.* at 127.  The Court found that the attorney general had a connection with the enforcement of the challenged law, because his responsibility for bringing civil enforcement against violators would, if the law was deemed unconstitutional, strip him of his "official or representative character," thereby subjecting him to the "consequences of his individual conduct."  *Id.* at 157-61.

Plaintiffs argue there is a sufficient factual connection between Warden Stebeger's actions and Plaintiffs' injury, and rely on the Third Circuit's decision in *Finberg v. Sullivan* for support.  634 F.2d 50 (3d Cir. 1980).  In *Finberg*, the Court applied the *Ex parte Young* exception and found the Philadelphia County prothonotary and sheriff were proper defendants in a lawsuit challenging the constitutionality of Pennsylvania's post-judgment garnishment procedures.  *Id.* at 54.  Under state law, the prothonotary and sheriff were charged with enforcing the allegedly unconstitutional garnishment procedures.  *Id.*  In finding the sheriff and prothonotary to be proper defendants in that case, the Court cited the reasoning employed by the Supreme Court in *Ex parte Young*, even though the duties of the sheriff and prothonotary were "entirely ministerial."  *Id.* ("We note that courts often have allowed suits to enjoin the performance of ministerial duties in connection with allegedly unconstitutional laws.").  Here, Plaintiffs have alleged Warden Steberger is responsible for enforcing the bail orders from the MDJ's by detaining Plaintiffs and other individuals who are unable to pay unaffordable cash bail imposed by the MDJ's.  Plaintiffs have pleaded sufficient facts at this stage to show a connection between her actions and their constitutional injury.  Accordingly, Warden Steberger's motion to dismiss Count I of the Complaint is denied.

### B.  Substantive Due Process Claim

Plaintiffs allege the MDJ's have violated and continue to violate their substantive due process rights by imposing unaffordable cash bail through constitutionally defective proceedings, and that Warden Steberger violated and continues to violate their rights by executing the MDJ's orders.  The MDJ's argue, as they did regarding Plaintiffs' procedural due process claim, that Plaintiffs have failed to identify any practice or policy that has resulted in any alleged constitutional violation.  Similarly, Warden Steberger argues that she is not a proper defendant to Plaintiffs' substantive due process claim because of her lack of involvement or

responsibility in the preliminary arraignment process.  But as discussed, *supra*, Plaintiffs are not required to identify a specific policy or practice to state a due process claim, and Warden Steberger is a proper defendant to this action even in light of what she claims is limited involvement in the preliminary arraignment process.  For these reasons, Defendant MDJ's and Warden Steberger's motions to dismiss Count II of the Complaint are denied.

### C. Right to Counsel Claim

Plaintiffs allege the MDJ's and defendant Lancaster County violate their Sixth Amendment and Fourteenth Amendment right to counsel by failing to appoint counsel at preliminary arraignments. The parties agree that the right to counsel attaches at preliminary arraignments.  The disagreement lies, however, on when counsel should be appointed and whether the preliminary arraignment constitutes a critical stage.

It is well settled that counsel should be present at all "critical stages" of a criminal prosecution. *Missouri v. Frye*, 566 U.S. 134, 140 (2012); *United States v. Wade*, 388 U.S. 218, 225 (1967).  The Sixth Amendment right to counsel attaches following the initiation of criminal proceedings against a criminal defendant.  *Moran v. Burbine*, 475 U.S. 412, 428 (1986) (citing *United States v. Gouveia*, 467 U.S. 180, 187 (1984); *Kirby v. Illinois*, 406 U.S. 682, 689 (1972) (opinion of Stewart, J.)).  The initiation of criminal proceedings takes place by way of "formal charge, preliminary hearing, indictment, information or arraignment."  *Kirby*, 406 U.S. at 689.

The parties here do not dispute the right to counsel attaches at the preliminary arraignment.  The dispute lies in whether Plaintiffs were entitled to appointed counsel during the preliminary arraignment, and whether the preliminary arraignment constitutes a "critical stage" of the prosecution.  In support of their arguments, the parties all rely on the Supreme Court's decision in *Rothgery v. Gillespie Cnty., Tex*. 554 U.S. 191 (2008).  In that case

petitioner Rothgery had been arrested and charged with being a felon in possession of a firearm after a criminal background erroneously found that he had previously been convicted of a felony. *Id.* at 195. In Texas, an Article 15.17 hearing is an initial appearance before a magistrate, wherein the magistrate conducts a probable cause determination, sets any bail conditions, and formally informs the criminal defendant of the accusation against him. *Id.* Rothgery was brought before a magistrate for his Article 15.17 hearing, during which the magistrate "determined that probable cause existed for the arrest," informed Rothgery of the nature of the charges against him, set bail at $5,000 and then ordered Rothgery detained. *Id.* at 196. Rothgery was subsequently released after posting the $5,000 bail. Rothgery requested court-appointed counsel on several occasions both orally and in writing, but these requests went "unheeded." *Id.* Several months later he was indicted on the charge and rearrested – this time his bail was set at $15,000. *Id.* Unable to afford the bail, Rothgery was detained for three weeks before he was appointed counsel. *Id.* His appointed counsel then moved successfully for a bail reduction so Rothgery could be released, and then obtained paperwork showing Rothgery had never been convicted of a felony. *Id.* at 196–97. The charges were subsequently dropped. *Id.* at 197.

Rothgery brought a § 1983 action alleging Gillespie County's failure to appoint counsel and his resulting pre-trial detention violated his Sixth Amendment right to counsel. *Id.* In conducting its Sixth Amendment analysis, the Court noted that the right to assistance of counsel "does not attach until a prosecution is commenced." *Id.* at 198 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)). Citing precedent, the Court stated that a prosecution is commenced by "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment,'" *Gouveia*, 467 U.S. at 188

(quoting *Kirby*, 406 U.S. at 689 (1972) (plurality opinion)).  The Court held that in a criminal case, "the accused at least is entitled to the presence of appointed counsel during any 'critical stage' of the post-attachment proceedings."  *Id.* at 212 (2008).  The Court defined a "critical stage" as "a proceedin[g] between an individual and agents of the state…that amount[s] to [a] trial like confrontation[,]"  *id.* at 212, n. 16 (citations omitted), and stated that "counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself."  *Id.* at 212.

The parties here have presented different interpretations of the Court's holding in *Rothgery*.  The MDJ's argue the holding in *Rothgery* provides that the right to counsel attaches at preliminary arraignments, but that it does not provide a right to counsel at the preliminary arraignments.  In their view *Rothgery* requires counsel be provided at all critical stages of post-attachment proceedings.  The MDJ's also argue the preliminary arraignment does not constitute a critical stage under *Rothgery*.  Relying on Justice Alito's concurrence, the MDJ's contend that the preliminary arraignment is not a critical stage of the proceedings, because the proceedings do not involve any pleas, witness interrogation or any other "trial-like" confrontations.  *Id.* at 216 (Alito, J., concurring).

Similarly, defendant Lancaster County argues that *Rothgery* requires counsel be appointed following the preliminary arraignment, as the right attaches at said proceedings.  In response, Plaintiffs argue the MDJ's and Lancaster County have misconstrued what they view is the narrow holding of *Rothgery*.  Plaintiffs contend that the Court's holding in *Rothgery* merely stated that the Article 15.17 hearing marked the start of judicial proceedings against petitioner Rothgery, but that the Court never stated whether the hearing itself constituted a critical stage.  Plaintiffs also argue that Rothgery's holding as to the requirement of appointed counsel at

"critical stages of [] post-attachment proceedings" was dicta. *See id.* at 212. Plaintiffs'

arguments as to their interpretation of *Rothgery* were made in their analysis of the District

Court's decision in *Bronner v. Marsh*.

The MDJ's and Lancaster County both rely heavily on the District Court's decision in

*Bronner v. Marsh*. In *Bronner*, a habeas petitioner claimed he received ineffective assistance of

counsel when his trial counsel failed to raise a Sixth Amendment violation alleged to have

resulted from petitioner having been without an attorney at his preliminary arraignment. No.

20-CV-2656, 2021 WL 2366949, at *7 (E.D. Pa. Mar. 19, 2021), *report and recommendation*

*adopted*, No. 20-CV-2656, 2021 WL 2351679 (E.D. Pa. June 9, 2021). In that case, the

petitioner's preliminary arraignment took place on April 1, 2014. *Id.* The Magisterial District

Court then scheduled his preliminary hearing for April 9, 2014, and then rescheduled it for May

28, 2014. *Id.* In the meantime, counsel was appointed on April 23, 2014. *Id.*

In addressing petitioner's habeas petition, the District Court noted that petitioner's right

to counsel attached at the preliminary arraignment, as it was the "first stage in criminal

proceedings against him." *Id.* at *8. Citing *Rothgery*, the Court stated that counsel was

required at all critical stages following attachment. *Id.* The Court found that petitioner's Sixth

Amendment right to counsel was not violated, as he was appointed counsel following his

preliminary arraignment and was represented by counsel at the very next stage of his

proceedings, which was the preliminary hearing. *Id.*

In addition to the Supreme Court's decision in *Rothgery*, the *Bronner* court discussed

another case from this district involving a Sixth Amendment right to counsel claim - *Cronin v.*

*West Whiteland Twp*, 994 F.Supp. 595 (E.D. Pa. 1998). In *Cronin*, the plaintiff was arrested

following a domestic violence incident. *Id.* at 597. Plaintiff alleged his Sixth Amendment right

to counsel was violated because he was never given an opportunity to contact his counsel immediately following his arrest, and, the attorney who represented him during the preliminary arraignment was provided through his wife. *Id.* at 603. The Court found there was no basis for the plaintiff's Sixth Amendment claim. Citing *Moran*, *Kirby* and the Third Circuit's decision in *Giuffre v. Bissell*, the Court stated "[t]he Sixth Amendment right to counsel attaches only after the initiation of adversary criminal proceedings, by way of formal charge, preliminary hearing, indictment, information or arraignment." *Id.* (citations omitted). The Court found that no matter how his counsel was procured, because the plaintiff was represented by counsel at the earliest point following the initiation of criminal proceedings, in this case the preliminary hearing, plaintiff's Sixth Amendment right to counsel was not violated. *Id.*

Plaintiffs argue that *Bronner* and *Cronin* were wrongly decided. As noted, Plaintiffs' argument is that the *Bronner* Court misconstrued the holding in *Rothgery* regarding post-attachment proceedings. With respect to *Cronin*, Plaintiffs argue the Court's cited authority was inapplicable to the issue of court appointed counsel at preliminary arraignments, as these were cases where the Supreme Court held a criminal defendant was not entitled to counsel at or during events that transpired before any adversarial proceeding had commenced. *See Moran*, 475 U.S. 412, 428 (1986) (defendant not entitled to counsel during police interrogation); *Kirby*, 406 U.S. at 690 (defendant not entitled to counsel during pre-arrest lineup); *see also Giuffre v. Bissell*, 31 F.3d 1241, 1257 (no entitlement to counsel during forfeiture negotiations). But even where the cases cited addressed the appointment of counsel prior to the initiation of criminal proceedings, the Court's holding in *Cronin* is consistent with *Rothergy*, in that the plaintiff was represented by counsel at the earliest stage following his preliminary arraignment, which was the preliminary hearing, and the Sixth Amendment right to counsel was not violated. *See*

*Cronin*, 994 F.Supp. at 603.

The MDJ's also rely on precedent from the Pennsylvania Supreme Court for their argument that the preliminary arraignment is not a critical stage.  In *Commonwealth v. Padilla*, defendant appealed his murder conviction, arguing, *inter alia*, that his Sixth Amendment right to counsel was violated.  622 Pa. 449, 472 (2013).  Following his arrest for first degree murder, Padilla was not provided counsel for 47 days.  *Id.*  His preliminary hearing was then held two weeks later.  *Id.* at 473.  Padilla argued that he should have been appointed counsel during the 10-day period following the preliminary arraignment, as that time period constituted a "critical stage of the proceedings."  *Id.* at 476.  The Court found that the appointment of counsel 47 days after Padilla's arrest was consistent with the rule set forth by the Supreme Court in *Rothgery*, wherein counsel must be appointed within a reasonable time following post-attachment.  *Id.* at 477.  In declining to rule that the ten day period was a critical stage, the Court focused on the lack of "proceedings" or "trial-like confrontations" during time period, stating "to hold an entire ten-day block of time is a 'critical stage,' regardless of whether any actual 'proceedings' or 'trial-like confrontations take place during that time, would extend the High Court's Sixth Amendment jurisprudence beyond reason or recognition."  *Id.* (citing *Rothgery*, 554 U.S. at 212, n.16.  The Court then cautioned that such an extension would require counsel be appointed immediately following preliminary arraignments, regardless of whether counsel was requested or if the defendant had the ability to retain his own counsel.  *Id.*  Such a requirement would be "unreasonable and unworkable."  *Id.*  Plaintiffs argue *Padilla* is not applicable to this case because the Pennsylvania Supreme Court did not affirmatively hold that the preliminary arraignment was not a critical stage of the proceedings.

Despite Plaintiff's arguments, this Court finds the three cases – *Bronner*, *Cronin* and

*Padilla* – persuasive and in line with the rule set forth in *Rothgery*.  We concur with the rule set

forth in our jurisdiction - the Sixth Amendment right to counsel attaches at the initiation of

criminal proceedings, which in Pennsylvania is the preliminary arraignment. *See Rothgery*, 554

U.S. at 212; *Bronner*, 2021 WL 2366949, at *8; *Cronin*, 994 F.Supp. at 603; *Padilla*, 622 Pa. at

477.  A criminal defendant is then entitled to counsel at all critical stages post-attachment.  *See*

*id.*  And in Pennsylvania, the first critical stage post-attachment is the preliminary hearing.

Therefore, Plaintiffs are unable to state a claim that their Sixth Amendment right to counsel was

violated when they were not appointed counsel for their preliminary arraignments. Accordingly,

the MDJ's and Lancaster County's motions to dismiss Count III of Plaintiffs' complaint are

granted.

### D.  Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

essentially a direction that all persons similarly situated should be treated alike."  *City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S.

202, 216 (1982)).  An equal protection claim can proceed under a theory that a plaintiff was

treated differently due to their membership in a protected class, or under a "class of one" theory.

To set forth an equal protection claim under a class-based theory, a plaintiff must allege that he

is a member of a protected class and that he received different treatment than that received by

other similarly situated individuals due to his membership in that protected class.  *See Oliveira*

*v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002).  "Equal protection suits under a

'class of one' theory are appropriate where 'it appears that an individual is being singled out by

the government' such that 'the specter of arbitrary classification is fairly raised.'"  *Bag of*

*Holdings, LLC v. City of Philadelphia*, 682 F. App'x 94, 98 (3d Cir. 2017) (quoting *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 602 (2008)).  To state an equal protection claim under a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir.2006); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  "Under the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim."  *Aulisio v. Chiampi*, 765 F. App'x 760, 764–65 (3d Cir. 2019).

Plaintiffs claim their rights under the Equal Protection Clause are violated by the MDJ's' imposition of cash bail without considering their ability to pay or alternative conditions of release, and by Warden Stebeger's execution of the MDJ's orders.  Plaintiffs allege they and others similarly situated are detained solely because of their inability to pay.  In the MDJ's motion and the Plaintiffs' response, both parties emphasized the type of equal protection claim being brought and not whether the allegations themselves have adequately stated an Equal Protection claim.  The MDJ's contend that because Plaintiffs do not point to a schedule or policy that requires a fixed bail amount for criminal defendants, and, that the MDJ's bail determinations were based on individualized determinations, Plaintiffs must allege sufficient facts regarding the disparate treatment between Plaintiffs and "similarly situated" parties.  The MDJ's argue that Plaintiffs have failed to allege sufficient facts to establish their claim under this theory.  Plaintiffs argue their claim is not a "class of one theory" claim, which distinguishes them from the cases cited by Defendants, pointing out those cases involved claims where "a plaintiff who alleges an Equal Protection claim does not aver membership in a class or group." *See Professional Dog Breeders Advisory Council, Inc. v. Wolff*, 752 F. Supp. 2d 575, 586 (E.D.

Pa. 2010); *Perano v. Twp. Of Tilden*, 423 Fed. App'x 234, 238 (3d Cir. 2011); *Maxwell v. Sober*, 2021 WL 4709706, at *5-6 (E.D. Pa. Oct. 8, 2021).  Plaintiffs contend their claim is based on their membership in a class group, and as such they are not required to plead specific comparators.  *See Cypher v. California Univ. of Pennsylvania*, 914 F. Supp. 2d 666, 667 (W.D. Pa. 2012).

In *Cypher*, a student who suffered from depression filed suit against California University of Pennsylvania and school officials alleging an equal protection violation.  *Id.*  The student alleged that he suffered from depression, the defendants offered a course repeat policy to all graduate students, defendants had honored the requests of other graduate students under that policy, and defendants violated his rights when they denied the student the opportunity to avail himself of the policy on account of his depression.  *Id.* at 667.  Defendants argued plaintiff could not state a claim because he was unable to specifically name or identify individuals who were treated differently in his complaint.  *Id.*  The Court found that the student was not required to provide specific identifying information for other individuals to satisfy his claim at the motion to dismiss stage.  *Id.* ("[A] plaintiff need not establish the elements of a prima facie case; a plaintiff merely must put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)).  The Court emphasized the fact intensive nature of such an inquiry, noting that so long as the plaintiff stated a plausible claim, he should be "entitled to engage in discovery as to whether the alleged comparators are, in fact, similarly situated."  *Id.* (quoting *Sims v. Court of Common Pleas of Allegheny County*, No. 10-CV-151, 2010 WL 3896428, at *4 (W.D.Pa. Sept. 30, 2010)).

Plaintiffs aver the *Cypher* court's holding provides that they are not required to plead specific comparators at this stage, and instead need only show that the exercise of fundamental or important rights is "wholly contingent on one's ability to pay."  Pls. Resp. to Mot. to Dismiss, ECF No. 34 at 9.  This Court is not persuaded.  Plaintiffs can proceed under two theories of Equal Protection – under either their membership in a protected class or under a class of one theory.  Plaintiffs note that the Supreme Court has treated discrimination involving indigent criminal defendants with heightened scrutiny in the past.  *See Tate v. Short*, 401 U.S. 395, 397-99 (1971); *Williams v. Illinois*, 399 U.S. 235, 241–42 (1970).  But each of these cases involved facially-neutral statutes that were found to have discriminated against indigent criminal defendants.  In *Tate*, plaintiffs brought an equal protection claim challenging a facially neutral statute that authorized imprisonment for failure to pay fines, *see* 401 U.S. at 397–99, and in *Williams* plaintiffs' equal protection claim challenged a facially neutral statute that authorized extended jail time beyond a maximum sentence if the defendant could not pay the required fines.  399 U.S. at 236–37.  And as argued by Defendants, Plaintiffs have yet to point to a policy or practice, let alone a statute, that has resulted in a violation of equal protection.  Moreover, Plaintiffs have not provided any facts regarding other similarly situated criminal defendants or even wealthier criminal defendants who were treated differently.  Instead, Plaintiffs' Equal Protection claim relies on the *presumption* that wealthier criminal defendants are treated differently.  Plaintiffs may yet be able to support their claim, but at this stage have failed to do so.

Plaintiffs have also likened their circumstances to the plaintiffs in *ODonnell v. Harris Cnty.*, 892 F.3d 147 (5th Cir. 2018), *overruled on other grounds*, *Daves v. Dallas Cnty.*, 22 F.4[th] 522 (5th Cir. 2022) (en banc).  In *ODonnell*, plaintiffs alleged the bail procedures in Harris

County, Texas violated indigent arrestees' rights to equal protection.  *Id.* at 152.  In that case the challenged bail procedure involved a bond schedule determined by county judges for individuals arrested for misdemeanors.  *Id.* at 153.  Bond amounts were then set by County Judges and Hearing Officers. *Id.*  The Fifth Circuit found that the bail procedure violated indigent arrestees' rights to equal protection, noting that indigent arrestees would be unable to pay the secured bail resulting in pre-trial detention, whereas similarly situated wealthy arrestees could pay the secured bail amounts and would be released pending trial.  *Id.* at 162.  But unlike the plaintiffs in *ODonnell*, Plaintiffs here have not pointed to a fixed schedule or policy requiring bail be set in cases involving certain criminal defendants or levels of offenses. Plaintiffs have alleged only that the MDJ's bail orders, which are issued following individualized bail determinations and not according to a schedule or policy, violate equal protection because they result in Plaintiffs' pre-trial detention on account of Plaintiffs' inability to pay.

At this stage, Plaintiffs have failed to plead specific factual allegations to raise a plausible inference they were treated any differently than other similarly situated individuals. Plaintiffs have also failed to plead specific allegations regarding any policy or procedure that resulted in a violation of their rights to equal protection.  For these reasons Plaintiffs have failed to support a claim of equal protection against the MDJ's.

With respect to Warden Stebeger, she argues she is an improper defendant given her limited involvement and authority to control the preliminary arraignments.  We found this argument unavailing with regard to Plaintiffs' due process claims because Plaintiffs had plead specific factual allegations to show a sufficient connection between Warden Steberger's actions and alleged violations of due process.  In this instance, however, Plaintiffs have failed to state

an equal protection claim from the facts pleaded in the complaint.  Therefore at this stage Plaintiffs have failed to show a sufficient connection to a constitutional injury, in this case a violation of equal protection.  Accordingly, Warden Steberger and the MDJ's motions to dismiss Count IV of the complaint are granted.

### E.  Eleventh Amendment Immunity

The MDJ's argue the Eleventh Amendment bars Plaintiffs' non-prospective claims in this action.  "[T]he Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens." *Chilcott v. Erie Cnty. Domestic Rels.*, 283 F. App'x 8, 10 (3d Cir. 2008) (citations omitted).  "Suits against a state agency or a state department thus are considered to be suits against a state which are barred by the Eleventh Amendment."  *Marinkovic v. Sinnot*, No. 1:12CV139, 2014 WL 1255886, at *10 (W.D. Pa. Mar. 26, 2014) (citations omitted).  "The Commonwealth [of Pennsylvania] vests judicial power in a unified judicial system, and all courts and agencies of [that system] are part of the Commonwealth government rather than local entities." *Haybarger v. Lawrence County Adult Probation and Parole*, 551 F.3d 193, 198 (3d Cir.2008) (citing *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240–41 (3d Cir.2005) and Pa. Const. art. V, § 1)).  The magisterial districts are components of Pennsylvania's unified judicial system.  *Erb v. Judge*, 1994 WL 523203, *1–2 (E.D.Pa. Sept.23, 1994).  Therefore the immunity attaches to the actions of the MDJ's.

However, "a person seeking purely prospective relief against state officials for ongoing violations of federal law may sue under the 'legal fiction' of *Ex parte Young*, 209 U.S. 123, 159–60 (1908), despite the text of the Eleventh Amendment."  *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 168 (3d Cir.2002).  "The *Young* doctrine is accepted as necessary

27

to permit federal courts to vindicate federal rights and to hold state officials responsible to the "supreme authority of the United States." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (O'CONNOR, J., joined by SCALIA and THOMAS, JJ., concurring in part and concurring in judgment)).

Plaintiffs have brought claims against the MDJ's in their official capacities to remedy what they allege are ongoing violations of federal law. Specifically, they allege the MDJ's impose unconstitutional bail orders in violation of Plaintiffs' rights to due process and Equal Protection under the 14th Amendment, and their right to counsel under the Sixth and Fourteenth Amendments. The ongoing violation alleged is their continued detention. *See McBride v. Cahoone*, 820 F. Supp. 2d 623, 635 (E.D. Pa. 2011). Additionally, the relief Plaintiffs seek with regard to the MDJ's is prospective. They are seeking a declaratory judgment that their continued detention violates their Sixth and Fourteenth Amendment rights. Therefore, Eleventh Amendment immunity does not bar Plaintiffs' claims against the MDJ's.

## F.  Leave to Amend

Third Circuit precedent "supports the notion that in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). An amendment would be futile

if it would not survive a motion to dismiss for failure to state a claim upon which relief should

be granted. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  With respect to Plaintiffs' right

to counsel claim (Count III) against the MDJ's and Lancaster County, we found the right to

counsel does not attach until preliminary arraignments, and as such, criminal defendants are

entitled to appointed counsel at any "critical stages" post-attachment. *See Rothgery*, 554 U.S. at

212.  Therefore Plaintiffs are not entitled to appointed counsel at the time of their preliminary

arraignment.  It is for this reason that an amended complaint as to Count III would not survive a

motion to dismiss for failure to state a claim. *See id.*  Therefore, Count III is dismissed with

prejudice.  Because it is unclear at this time whether Plaintiffs will be able to plead sufficient

factual allegations to state their equal protection claim, the Court will dismiss Count IV of the

complaint without prejudice and will permit Plaintiffs to file a curative amendment.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are **denied in part and

granted in part**.  An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

29