**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| H.C., *et al.*, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil No. 5:22-cv-01588-JMG |
| | : | |
| HON. BRIAN CHUDZIK, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

GALLAGHER, J.                                                    August 11, 2025

## I.    OVERVIEW

"Federal courts are courts of limited jurisdiction," wielding "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When a federal court possesses jurisdiction, however, it has a "virtually unflagging obligation" to exercise it. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

*Younger v. Harris*, 401 U.S. 37 (1971), is "a far-from-novel exception to this general rule." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (internal quotation marks and citation omitted). In that case, the Supreme Court of the United States carved out one area in which federal courts must refrain from deciding a case: "When there is a parallel, pending state criminal proceeding." *Id.* at 72.

Plaintiffs are incarcerated in Lancaster County Prison. In April 2022, they sued certain Lancaster County Magisterial District Judges (MDJs), Lancaster County, and Warden Cheryl Steberger. They say that the MDJs imposed unaffordable cash bail on them and a putative class of other pretrial detainees without conducting a meaningful, individualized inquiry into their financial condition as required by the Pennsylvania Constitution and the Pennsylvania Rules of Criminal

1

Procedure. Because this case falls within the exception laid out by *Younger* and its progeny, the Court abstains.

## II.    BACKGROUND

### A. The Pennsylvania Bail Process

Pennsylvania's bail process is governed by state constitutional and statutory provisions. Under Article 1, Section 14 of the Pennsylvania Constitution, all criminal defendants are entitled to bail except for capital offenses, offenses for which the maximum sentence is life imprisonment, or, to defendants for which "no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community." Pa. Const. art. 1 § 14. Under the Pennsylvania Rules of Criminal Procedure, when making their determination on the conditions of release for defendants, MDJs are required to "[c]onsider all available information as that information is relevant to the defendant's appearance or nonappearance at subsequent proceedings, or compliance or noncompliance with the conditions of the bail bond." Pa. R. Crim. P. 523(A). Such information includes:

> (1) the nature of the offense charged and any mitigating or aggravating factors that may bear upon the likelihood of conviction and possible penalty;
>
> (2) the defendant's employment status and history, and financial condition;
>
> (3) the nature of the defendant's family relationships;
>
> (4) the length and nature of the defendant's residence in the community, and any past residences;
>
> (5) the defendant's age, character, reputation, mental condition, and whether addicted to alcohol or drugs;
>
> (6) if the defendant has previously been released on bail, whether he or she appeared as required and complied with the conditions of the bail bond;
>
> (7) whether the defendant has any record of flight to avoid arrest or prosecution, or of escape or attempted escape;

(8) the defendant's prior criminal record;

(9) any use of false identification; and

(10) any other factors relevant to whether the defendant will appear as required and comply with the conditions of the bail bond.

*Id.*

If monetary bail is imposed, then MDJS are required to consider "the financial ability of the defendant" in addition to the criteria set forth in Rule 523. Pa. R. Crim. P. 528(A). These bail considerations are made during preliminary arraignments.

Preliminary arraignments in Pennsylvania follow the process set out in Rule 540 of the Pennsylvania Rules of Criminal Procedure. The proceedings may be held via video or in person. Pa. R. Crim. P. 540(A). During the preliminary arraignment, MDJs read the charges against the defendant, inform them of their right to counsel, and determine whether the defendant will be released pending trial and what, if any, bail conditions to impose. Pa. R. Crim. P. 540(F)-(I); ECF No. 52 at ¶¶ 41-42.  A preliminary hearing is also scheduled, which must take place not more than 14 days following the preliminary arraignment if the defendant is incarcerated. Pa. R. Crim. P. 540(G)(1).

In Lancaster County, preliminary arraignments generally occur within forty-eight hours of an arrest and are conducted by MDJs. Defendants usually appear remotely by video for the preliminary arraignments, which are not officially recorded or transcribed, and allegedly last a few minutes at most. ECF No. 52 at ¶¶ 51-52, 54. Lancaster County does not appoint counsel to represent indigent defendants during these proceedings.  *Id.* at ¶ 53.

MDJs in Lancaster County typically impose bail in one of two ways during preliminary arraignments. First, they may apply a "10%" bail condition, which requires the criminal defendant to pay at least 10% of the total bail amount. *Id.* at ¶ 55. Second, they may apply a "straight" bail

condition, which requires the defendant to pay the entire bail amount. *Id*. Either option can be paid with either cash or a bond. *Id.* at ¶ 56. Defendants who can afford to pay the cash bail or hire a bond company are released once cash bail is paid and those who cannot afford to pay remain imprisoned. *Id.* at ¶¶ 57-58.

After the preliminary arraignment, criminal defendants who cannot pay cash bail and therefore remain incarcerated can challenge the initial bail determination during their preliminary hearing. *Id.* at ¶ 59. Normally, these hearings are scheduled two weeks after the preliminary arraignment. *Id.* However, preliminary hearings in Lancaster County, Plaintiffs say, are often continued, forcing defendants to wait even longer for a chance to challenge their bail determination in court. *Id.* at ¶ 60.

Yet other options remain available. Under Rule 529 of the Pennsylvania Rules of Criminal Procedure, criminal defendants can file a motion for bail modification with the MDJ who imposed bail at any time, including before the preliminary hearing. Pa. R. Crim. P. 529(a)-(b). Further, defendants may move for bail modification with a judge of the Court of Common Pleas. *Id*. at 529(c). And Pennsylvania law allows defendants to appeal any of these rulings. Pa. R.A.P. 1610.

### B. Facts and Procedural History

The named Plaintiffs in this case, H.C., R.H., C.B., A.D., S.M., D.B., and G.H., were arrested at different times in Lancaster County in early 2022. They all appeared before MDJs for their preliminary arraignments, which took place through video either from Lancaster County Prison or from a police station. During each of these preliminary arraignments, Plaintiffs say that the MDJs failed to ask them about the required factors laid out in Rule 523, including financial status. But, according to Plaintiffs, the MDJs still imposed cash bail on them. Since they could not afford to post bail, Plaintiffs remained imprisoned pending trial.

On April 25, 2022, Plaintiffs brought this class action lawsuit against certain MDJs, Lancaster County, and Warden Steberger. Specifically, Plaintiffs assert violations of Procedural and Substantive Due Process against the MDJs and Warden Steberger, violations of their Sixth and Fourteenth Amendment Right to Counsel against the MDJs and Lancaster County, and violations of Equal Protection against the MDJs and Warden Steberger. The gravamen of Plaintiffs' case is that Defendants violated their constitutional rights by imposing unaffordable cash bail on them without considering their ability to pay, which they claim violates Rule 523.

Defendants tried several times to dismiss the claims against them. The first attempt came on July 18, 2022. On that day, Lancaster County and Warden Steberger filed a joint Motion to Dismiss. Later that day, the MDJs filed their own Motion to Dismiss.

This Court granted in part and denied in part the Motions to Dismiss on March 31, 2023. Specifically, the Court denied Defendants' Motion to Dismiss Counts I and II of the Complaint, dismissed with prejudice Count III of the Complaint, and dismissed without prejudice Count IV of the Complaint. Plaintiffs were granted leave to file an Amended Complaint as to Count IV.

Plaintiffs filed an Amended Complaint on May 22, 2023. The MDJs then moved to dismiss the Amended Complaint on June 13, 2023. The Court denied the MDJs' second Motion to Dismiss on January 22, 2024.

Eight days later, on January 30, 2024, the Court issued an order requiring the parties to brief the following topics:

1. Whether *Younger* abstention should apply to this case in light of *Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001), and *Daves v. Dallas County*, 64 F.4th 616 (5th Cir. 2023).

2. Whether *Pullman* abstention should apply to this case, *i.e.*, whether Plaintiffs' allegations present a facial or as-applied challenge and whether Pennsylvania state

courts are better situated to answer that question based on their own interpretation of their constitution, statutes, and codes; and

3. Whether this case is properly brought under the *Ex parte Young* exception to the Eleventh Amendment.

Because abstention is required under *Younger*, this Court's analysis begins and ends with the first question.

## III.    DISCUSSION

### A.  *Younger* Abstention Has Not Been Waived

Before determining whether abstention is mandated by *Younger* and its progeny, this Court must decide whether it even has the authority to consider abstention in the first place. The fact that the Court has raised the abstention question *sua sponte* is not a bar to addressing this threshold issue. After all, federal courts bear "an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte.*" *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995) (citations omitted); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). So "it is proper for the Court to consider *sua sponte* whether the abstention principles announced in *Younger v. Harris* apply because they bear on the Court's obligation to exercise subject matter jurisdiction over the present action." *Coyle v. Pennsylvania*, 2023 WL 3594146, at *3 (E.D. Pa. May 22, 2023) (citations and footnote omitted).

Perhaps recognizing the Court's authority to raise abstention on its own, Plaintiffs argue that the Court should decline to determine whether abstention is appropriate because Defendants waived any *Younger* argument. Defendants did so, Plaintiffs say, by failing to raise it in the previous Motions to Dismiss and Answer. ECF No. 67, at 3. Plaintiffs point to two cases in support

of their argument: *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471 (1977) and *Cradle of Liberty Council, Inc. v. City of Philadelphia*, 2010 WL 68874 (E.D. Pa. Jan. 6, 2010). Neither case is persuasive.

*Ohio Bureau of Employment Services v. Hodory* centered on Appellee Leonard Paul Hodory, who worked for United States Steel Corporation at a plant in Ohio and was furloughed when the plant was shut down because of a reduction in fuel supply caused by a nationwide strike. 431 U.S. at 473. Appellee applied to Appellant Ohio Bureau of Employment Services for unemployment benefits, but his claim was rejected under an Ohio statute that prohibited employment benefits if "unemployment was due to a labor dispute other than a lockout at any factory, establishment, or other premises located in this or any other state and owned or operated by the employer by which he is or was last employed." *Id*. Appellee sued the Bureau and its director, Albert G. Giles, under 42 U.S.C. § 1983 in the United States District Court for the Northern District of Ohio, seeking declaratory and injunctive relief on behalf of himself and "all others similarly situated" who had been denied benefits under the state statute. *Id*. at 475.

Appellant, who was essentially the State of Ohio, argued that the District Court should abstain from hearing the case under *Younger*.[1] But the District Court held that abstention was improper. On appeal, the Appellant did not challenge the District Court's refusal to abstain from hearing the case by requesting a remand. In fact, at oral argument, Appellant "resisted the suggestion of such a remand." *Id*. at 479. Instead, amicus argued for abstention in the Supreme Court. The Supreme Court found that because Appellant refused to challenge the District Court's abstention decision, it "either believe[d] that the District Court was correct in its analysis of

---

[1] Although Appellant cited *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941), in its brief to the District Court, the Supreme Court understood the argument to be based on *Younger* abstention.

abstention or, faced with the prospect of lengthy administrative appeals followed by equally protracted state judicial proceedings, now has concluded to submit the constitutional issue to this Court for immediate resolution." *Id*. at 480. So the Supreme Court also declined to abstain, holding that "[i]f the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system." *Id*.

Plaintiffs rely on *Hodory* to try to keep this Court from considering abstention. They claim that like the Appellant in that case, Defendants here voluntarily chose to submit the constitutional issues in this case to the Court by failing to request *Younger* abstention. That argument, however, understates the Appellant's actions in *Hodory*. The Appellant not only failed to ask the Supreme Court to abstain but also explicitly resisted the Supreme Court's suggestion that abstention may be proper. *Id*. at 479. Although Defendants did not independently ask for abstention, they do not resist the possibility that abstention may apply here and actually urge this Court to invoke the doctrine to refrain from hearing the case. *See generally* ECF Nos. 68 & 69. Defendants' failure to request abstention earlier in the case does not by itself reflect a voluntary choice to submit to a federal forum, especially when Defendants now call for *Younger* abstention. *Cf. Hodory*, 431 U.S. at 480.

*Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986), supports the conclusion that failing to independently raise abstention is not enough to waive it. In that case, "Appellee Dayton Christian Schools, Inc. (Dayton), and various individuals brought an action in the United States District Court for the Southern District of Ohio under 42 U.S.C. § 1983, seeking to enjoin a pending state administrative proceeding brought against Dayton by [A]ppellant Ohio Civil Rights Commission (Commission)." *Id*. at 621. In determining whether the District Court should have abstained from considering the case, the Supreme Court, citing *Hodory* and two

other cases, recognized that "[a] State may of course voluntarily submit to federal jurisdiction even though it might have had a tenable claim for abstention." *Id*. at 626 (citations omitted). Buit the Supreme Court also explained that in each of the cases supporting this rule, "the State expressly urged [it] or the District Court to proceed to an adjudication of the constitutional merits." *Id*. Finding no such consent in that case, it found that there was no waiver. *Id*.

Similarly, Defendants in this case have not asked the Court to move on to the merits of Plaintiffs' claims. Rather, they have expressly urged this Court to abstain. *See generally* ECF Nos. 68 & 69. Based on these facts, the Court concludes that Defendants did not waive *Younger* abstention by not raising it sooner. *Dayton*, 477 U.S. at 626 ("We think there was no similar consent or waiver here, and we therefore address the issue of whether the District Court should have abstained from deciding the case.").

The second case that Plaintiffs cite—*Cradle of Liberty Council*—also fails to persuade that this Court lacks the authority to consider abstention. That case arose "from a dispute between the City of Philadelphia [] and the Cradle of Liberty Council. Inc., Boy Scouts of America [] over Cradle of Liberty's use of the building located at 22nd and Winter Streets, now known as the Bruce S. Marks Scout Resource Center." *Cradle of Liberty Council, Inc.*, 2010 WL 68874, at *1. Another court in this District found that the City of Philadelphia waived *Younger* because, in submitting a motion for stay of the state court action, the City "at once affirmatively sought to have [the District Court] resolve its case and requested that the state court abstain." *Id*. at *3. In this case, Defendants have only failed to ask this Court to abstain in their Motions to Dismiss. They have not taken any affirmative steps—like filing a motion for stay of any state court proceedings—that shows a desire to have the Court resolve this case on the merits. In the absence of such additional steps, Defendants have not waived their ability to invoke *Younger*.

### B. *Younger* Abstention Is Appropriate

Now that the Court is satisfied that it may properly address the issue of abstention, it begins its analysis of whether to invoke *Younger* with the eponymous case. In the second half of the twentieth century, federal courts began "hearing a variety of First Amendment challenges to various state criminal laws." *Daves*, 64 F.4th at 624. *Younger* was part of this trend. In that case, Appellee John Harris was indicted and prosecuted by California for violating the state's Criminal Syndicalism Act. *Younger*, 401 U.S. at 38. He then filed suit in District Court, asking to enjoin Appellant Evelle J. Younger, the District Attorney of Los Angeles County, from prosecuting him because "the prosecution and even the presence of the Act inhibited him in the exercise of his rights of free speech and press, rights guaranteed him by the First and Fourteenth Amendments." *Id*. at 39.

The *Younger* Court responded by carving out an exception to the general rule that, jurisdiction existing, a federal court carries a heavy obligation to hear a case. It held that abstention was called for under "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id*. at 43-44. The Court explained that abstention would "prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted." *Id*. at 44. And, even more importantly according to the Court, its decision was "reinforced" by "Our Federalism," which the Court defined as "the notion of 'comity,' that is, a proper respect for state functions." *Id*. "Our Federalism" charts a middle course between "blind deference to States' Rights" and the "centralization of control over every important issue in our National Government and its courts" by recognizing a "longstanding public policy

against federal court interference with state court proceedings." *Id*. at 43-44 (internal quotation marks omitted).

After deciding *Younger*, the Supreme Court expanded the case into new legal terrain. John H. Giammatteo, The New Comity Abstention, 111 Cal. L. Rev. 1705, 1714 (2023). In *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975), it extended *Younger* to state civil proceedings. In *Juidice v. Vail*, 430 U.S. 327 (1977), it extended *Younger* to state civil contempt proceedings. In *Trainor v. Hernandez*, 431 U.S. 434 (1977), it extended *Younger* to state civil enforcement proceedings. In *Moore v. Sims*, 442 U.S. 415 (1979), it extended *Younger* to state child welfare proceedings. And in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982), it extended *Younger* to attorney discipline proceedings.

Given *Younger*'s steady expansion, the Supreme Court also moved to clarify when the doctrine applies. This clarification arrived in *Middlesex*. There, the Court announced that *Younger* abstention "is appropriate only if (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989) (citing *id*. at 432).

The Supreme Court's most recent foray into *Younger* abstention further clarified the case's scope. In *Sprint Commc'ns, Inc. v. Jacobs*, the Court reaffirmed the principle that there are "exceptional circumstances" that "justify a federal court's refusal to decide a case in deference to the States." 571 U.S. at 78. It went on to explain that these exceptional circumstances exist in "three types of proceedings:" "ongoing state criminal prosecutions," "certain civil enforcement proceedings," and "pending civil proceedings involving certain orders uniquely in furtherance of

the state courts' ability to perform their judicial functions." *Id*. (internal quotation marks and citations omitted).

Our Court of Appeals—the Third Circuit—described *Sprint* as a sea change. In *Malhan v. Sec'y United States Dep't of State*, the Third Circuit announced "that the three *Middlesex* conditions are no longer the test for *Younger* abstention." 938 F.3d 453, 462 (3d Cir. 2019) (citing *Sprint*, 571 U.S. at 81; *Hamilton v. Bromley*, 862 F.3d 329, 337 (3d Cir. 2017)). Instead, the Third Circuit held that "*Younger* applies to only three exceptional categories of proceedings: (1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings; and (3) pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Malhan*, 938 F.3d at 453 (citations omitted). The Third Circuit, however, did not completely write off the *Middlesex* factors, finding that they should be considered "[o]nly after a court finds that a proceeding fits one of those descriptions." *Id*. Turning the focus away from the *Middlesex* factors and towards the three categories, the Third Circuit explained, "narrowed" *Younger* by preventing *Middlesex*'s "*additional* factors" from extending abstention "to virtually all parallel state and federal proceedings." *Id*. (quoting *Sprint*, 571 U.S. at 81) (emphasis in original).

Heeding the Third Circuit's instruction, this Court begins as it must, with determining whether the present suit fits into any of *Sprint*'s categories. Plaintiffs challenge the constitutionality of Lancaster County's bail procedures. Such a claim does not involve "civil enforcement proceedings," or "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 69 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367-68

(1989)). So the last two categories do not apply here. And neither party claims that they do. *See generally* ECF Nos. 67, 68, 69.

Resolution of this issue then turns on whether Plaintiffs' federal claims challenging state bail procedures fit into the first *Sprint* category—ongoing state criminal prosecutions. The parties take opposing stances on this question. Plaintiffs say that *Younger* has no bearing on their claims because their suit attacks the "legality of their pretrial detention," not their "underlying criminal prosecutions." ECF No. 67 at 4. Defendants, one the other hand, claim that this case falls within *Younger*'s first category because Plaintiffs are "engaged in state court criminal prosecutions" in Lancaster County. ECF No. 68 at 3, *see also* ECF No. 69 at 6-7.

Third Circuit law does not clearly resolve this dispute. Although our Circuit has reviewed and discussed *Younger* abstention on numerous occasions, *see, e.g.*, *Borowski v. Kean Univ.*, 68 F.4th 844, 849 (3d Cir. 2023), none of those cases directly address *Younger*'s applicability to federal challenges to state bail determinations. So the Court finds itself novel legal ground within the Third Circuit.

But two of *Younger*'s progeny offer some guidance on whether abstention is required in bail challenges. In 1974, the Supreme Court decided *O'Shea v. Littleton*, 414 U.S. 488 (1974), where it found that *Younger* abstention was necessary in a case challenging state criminal procedures. *O'Shea* featured a group of plaintiffs from Illinois who sued a magistrate and a circuit court judge they alleged were engaged in a pattern and practice of discriminatory criminal practices, including notably the imposition of unaffordable bail. *Id*. at 490-91. The plaintiffs requested "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials." *Id*. at 500. The Supreme Court recognized that such an injunction "would disrupt the normal course of proceedings in the state

courts via resort to the federal suit for determination of the claim *ab initio*." *Id*. at 501. Such overreaching federal oversight, the Supreme Court found, would constitute "an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger v. Harris* . . . and related cases sought to prevent." *Id*. at 500. Thus, the Supreme Court held that the principles of "equity, comity, and federalism" elucidated in *Younger* "preclude[d] equitable intervention." *Id*. at 499.

Just one year later, the Supreme Court handed down a seemingly conflicting ruling in *Gerstein v. Pugh*, 420 U.S. 103 (1975). There, a class of people imprisoned in Florida were charged by information and thus lacked the right to a judicial hearing on the issue of probable cause. *Id*. at 105-06. The plaintiffs sought injunctive relief to receive immediate probable cause determinations. *Id*. at 107. As *O'Shea* made clear, this kind of relief seemed to run headlong into *Younger*. But in footnote nine, the Supreme Court held that the plaintiffs' "claim for relief was not barred by the equitable restrictions on federal intervention in state prosecutions." *Id*. at 108 n.9 (citing *Younger*, 401 U.S. 37). *Younger* did not apply, the Supreme Court reasoned, because "[t]he injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution." *Id*.

Almost a half century later, the different outcomes reached by *O'Shea* and *Gerstein* have created a circuit split on the question of whether *Younger* applies to federal attacks on state bail practices. Relying on *O'Shea*, the first line of cases posits that such cases should not be adjudicated in federal court. *See, e.g.*, *Wallace v. Kern*, 520 F.2d 400 (2d Cir. 1975). *Daves v. Dallas County*, 64 F.4th 616 (5th Cir. 2023), is the most recent appellate court decision reflecting this view. That case began when District Judges in Dallas County promulgated bail schedules for arrestees that "operate[d] like a menu, associating various prices for release with different types of crimes and

arrestees." *Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 530 (5th Cir. 2022) (internal quotation marks and citation omitted). Plaintiffs subject to these bail schedules—much like the ones in this case—alleged that they were unconstitutionally incarcerated before trial simply because they could not afford to post bail. The District Court provided the plaintiffs with broad injunctive relief, which was later upheld by the Fifth Circuit. *See, e.g.*, *ODonnell v. Harris Cnty.*, 892 F.3d 147, 166 (5th Cir. 2018) ("To enforce the 48-hour timeline, the County must make a weekly report to the district court of misdemeanor defendants identified above for whom a timely individual assessment has not been held."). Backtracking, an *en banc* Fifth Circuit overruled that decision, holding that *Younger* mandated abstention because the injunction "plainly show[ed] federal court involvement to the point of ongoing interference and 'audit' of state criminal procedures." *Daves*, 64 F.4th at 631. The fact that the plaintiffs had access to "state court remedies" also supported the conclusion that *Younger* precluded federal court intervention. *Id*.

Focusing instead on *Gerstein*'s footnote nine, the second line of cases contends that *Younger* does not call for abstention in bail challenges. *See, e.g.*, *Just City, Inc. v. Bonner*, 758 F. Supp. 3d 785, 802 (W.D. Tenn. 2024). Perhaps the most significant appellate court decision to carry the torch for this position is *Walker v. City of Calhoun, GA*, 901 F.3d 1245 (11th Cir. 2018). The facts giving rise to that case are straightforward and, by now, familiar. A class of indigent detainees alleged that a Georgia city's secured bail system was unconstitutional because it did not consider their ability to pay. *Id*. at 1252. The detainees "sought injunctive relief to receive prompt probable cause determinations, and the State argued that *Younger* should have barred the district court from considering the claim." *Id*. at 1254. The Eleventh Circuit held that *Younger* did not apply to the case before it because the named plaintiff was "not asking to enjoin any prosecution."

*Id.* He simply requested "prompt bail determinations for himself and his fellow class members." *Id.*

At first glance, *O'Shea* and *Gerstein*—and the two opposing lines of cases they have spawned, represented by *Daves* and *Walker*—appear sharply at odds with each other. But these cases are connected by common factual and legal threads. In both cases, the plaintiffs asked federal courts for injunctive relief to remedy allegedly unconstitutional state criminal procedures, which often included unaffordable bail practices. In both cases, the courts wrestled with whether *Younger* compelled them to abstain. Yet the cases diverged on whether *Younger* abstention was appropriate.

Two factors harmonize this apparent conflict. The first one is the scope of equitable relief. The Supreme Court has repeatedly emphasized that federal courts should decline to hear cases requesting injunctive relief that would be "so intrusive" as to amount to "an ongoing federal audit of state criminal proceedings." *O'Shea*, 414 U.S. at 500. This principle partly explains the split in the *Younger* jurisprudence. The plaintiffs in *Gerstein* and *Walker* merely called "for a prompt pretrial determination of a distinct issue." *Walker*, 901 F.3d at 1255. Because this kind of narrow relief "is not sufficiently intrusive to implicate *Younger*," abstention was not proper. *Id.* at 1255. But the plaintiffs in *O'Shea* and *Daves* demanded injunctive relief that would mandate "periodic reporting," "open[] the federal courts any time an arrestee cries foul," and "permit a pre-trial detainee who claimed that the order was not complied with to proceed to the federal court for interpretations thereof." *Daves*, 64 F.4th at 630-31 (quoting *Wallace*, 520 F.2d at 406). Such broad relief ran afoul of *Younger*.

The second synchronizing factor is the availability of remedies in state court. Because this is a crucial *Middlesex* factor that must be considered later, the Court will not spend as much time addressing it here. For now, it is enough to say that "the *Younger* doctrine is based not only on a

reluctance to interfere with state court processes, but also on the refusal to afford equitable relief when adequate remedies at law exist." *Wallace*, 520 F.2d at 406. To this end, courts have declined to hear cases in which the plaintiffs have adequate opportunities to address their challenges in state court while taking on cases in which the plaintiffs lack meaningful state avenues for pursuing their claims.

Applying *Younger*'s illuminating principles, the Court finds that our case fits within *Sprint*'s first category because Plaintiffs seek the kind of broad equitable relief that has been squarely rejected by *O'Shea* and *Daves*. In their Amended Complaint, Plaintiffs ask the Court for an order enjoining Warden Steberger and her employees from executing orders by the MDJs to detain individuals on cash bail unless the MDJs engage in a constitutional adequate inquiry into all bail factors, including ability to pay. ECF No. 52 at 60. The functional reality of granting such an order paints an intrusive picture. Whenever a pretrial detainee in Lancaster County disagrees with an MDJ's bail determination, they will "cr[y] foul" and come running to federal court to vindicate their "interpretations" of the order. *Daves*, 64 F.4th at 630-31 (quoting *Wallace*, 520 F.2d at 406). Such a scheme would force this Court to sit as a specialized state appellate court tasked with resolving all bail disputes between pretrial detainees and MDJs in Lancaster County. This is exactly the kind of oversight that "constitutes 'an ongoing federal audit of state criminal proceedings . . . indirectly accomplishing the kind of interference that *Younger v. Harris* . . . and related cases sought to prevent.'" *Id*. at 631 (quoting *O'Shea*, 414 U.S. at 500).

Plaintiffs offer two counterarguments here. Neither one is persuasive.

First, Plaintiffs attempt to minimize the scope of their requested relief. Plaintiffs claim that they do not seek substantial alterations to Pennsylvania pretrial criminal procedures or open-ended federal oversight over Lancaster County's bail proceedings. Rather, Plaintiffs say that they only

17

want an injunction forcing the MDJs to consider a criminal defendant's ability to pay, which Plaintiffs believe is already enshrined in the state constitution and the Pennsylvania Rules of Criminal Procedure. This argument reflects the theory "that when plaintiffs request narrow procedural pretrial reforms," *Younger* should not apply. Alezeh Rauf, Abstaining from Abstention: Why *Younger* Abstention Does Not Apply in 42 U.S.C. § 1983 Bail Litigation, 171 U. Pa. L. Rev. 535, 557 (2022).

Even Plaintiffs' narrow framing of their proposed relief, however, falls within *Younger*'s reach. Plaintiffs take issue with whether and how MDJs consider a defendant's financial means when setting bail, as required by state law. Their preferred remedy is an order from this federal court. To be sure, their proposal does not expressly mandate the kind of periodic reporting on state court proceedings disavowed in *O'Shea*. 414 U.S. at 501 ("'periodic reporting' . . . would constitute a form of monitoring of the operation of state court functions that is antipathetic to established principles of comity."). But the Court fails to see how ordering MDJs to consider the financial status of defendants in bail determinations does not equate to federal court intervention. After all, such an order is aimed at "controlling" what occurs in state bail hearings. *Id*. at 500. And, as explained before, any disagreement about whether MDJs have complied with the order would necessarily result in pretrial detainees proceeding to this Court to determine what should happen in Lancaster County. This is "precisely the mischief" that is prohibited by *Younger* and its progeny. *Wallace*, 520 F.2d at 406.

Second, Plaintiffs argue that *Younger* is inapplicable because their claims are not directed at their underlying criminal prosecutions. The import of *Gerstein*, according to Plaintiffs, is that *Younger* is not implicated when state criminal defendants bring federal challenges to pretrial criminal procedures requesting injunctions "not directed at the state prosecutions as such."

*Gerstein*, 420 U.S. at 108 n.9. Plaintiffs point to *Walker* as an extension of that rule. There, the Eleventh Circuit did not invoke *Younger* because the plaintiffs did not seek "to enjoin any prosecution." *Walker*, 901 F.3d at 1254.

The Third Circuit, Plaintiffs say, embraced *Gerstein*'s lesson in *Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001). That case focused on the Philadelphia District Attorney's Office policy of rearresting some defendants and refiling against them criminal charges that had been dismissed at the preliminary hearing stage. *Id*. at 224 The plaintiffs alleged that the policy was unconstitutional because it did not provide for a new judicial determination of probable cause before defendants were rearrested. *Id*. The District Court sided with the plaintiffs and issued an injunction prohibiting the District Attorney from continuing the rearrest policy. *Id*. On appeal, the Third Circuit, relying on *Gerstein*, rejected *Younger* abstention because "the injunction was not addressed to a state proceeding and therefore would not interfere with the criminal prosecutions themselves." *Id*. at 226 (quoting *Moore*, 442 U.S. at 431).

Moving to their own case, Plaintiffs assert that this Court should refuse to abstain based on *Gerstein*, *Walker*, and *Stewart*. Analogizing to those cases, Plaintiffs say that their constitutional challenges are aimed at the legality of their pretrial detention, not at their criminal prosecutions. And they contend that their requested relief—a declaration that the MDJs' bail practices are unconstitutional and an order preventing the Warden from detaining criminal defendants based on such practices—would not affect the state's ability to prosecute them. Because their underlying prosecutions face no threat, Plaintiffs say that *Younger* does not apply.

But *Gerstein*, *Walker*, and *Stewart* are factually distinguishable from Plaintiffs' case. In all those cases, as Defendants recognize, the plaintiffs attacked the constitutionality of criminal procedures that prevented them from receiving a judicial hearing on their claims. In *Gerstein* and

*Stewart*, the "plaintiffs challenged law enforcement practices that . . . essentially prescribed pretrial detention without probable cause." *Daves*, 64 F.4th at 632. In *Walker*, the plaintiffs took issue with a policy that denied them bail hearings "until the next court session on the following non-holiday Monday." *Walker*, 901 F.3d at 1252. Plaintiffs here, in contrast, are not alleging that they have been denied a judicial hearing. Instead, they argue that the bail hearings they admittedly received failed to properly consider their financial means.

This distinction between no judicial review and allegedly faulty judicial review matters. In the absence of judicial hearings, a criminal defendant's constitutional challenge to a pretrial criminal procedure is not heard by any state tribunal. So, in those circumstances, there is no state court proceeding with which a federal court would be interfering with when taking on a defendant's case, which greatly diminishes *Younger*'s concern with respecting the independency of state courts to the point of rendering abstention unnecessary. *See Gerstein*, 420 U.S. at 108 n.9 ("The injunction was . . . directed . . . at the legality of pretrial detention without a judicial hearing."). But where, as here, a defendant has received a judicial hearing, a federal court would be directly intruding on a state court process by reviewing the implementation of state law by state judicial officials. The Court does not have the authority to meddle with its state peer in this manner. *See Wallace v. Kern*, 481 F.2d 621, 622 (2d Cir. 1973) ("[U]nder the principle known as comity a federal district court has no power to intervene in the internal procedures of the state courts.").

Thus, since granting relief in this case would require federal court interference with Pennsylvania's bail process, Plaintiffs' federal challenges fit within *Sprint*'s first category. Yet this does not automatically warrant abstention under *Younger*. After finding that a case is ensconced in one of the three *Sprint* categories, the Court must "consider *Middlesex*'s additional factors." *Malhan*, 938 F.3d at 462 (quoting *Sprint*, 571 U.S. at 81) (internal quotation marks and

emphasis omitted). To repeat, those three factors "are that the state proceeding (i) be ongoing and judicial in nature; (ii) implicate important state interests; and (iii) afford an adequate opportunity to raise federal claims." *Borowski*, 68 F.4th at 849.

Here, Plaintiffs do not refute that the first two *Middlesex* factors are satisfied. And for good reason. First, Plaintiffs are facing prosecution in Lancaster County so there is no doubt that there are ongoing, judicial proceedings in the state. ECF No. 68 at 3. Second, Pennsylvania has an undeniably significant interest in enforcing its "criminal statutes" by maintaining a bail system that strives to ensure that criminal defendants face justice and appear for trial. *Sprint*, 571 U.S. at 78. The only remaining question then is whether Plaintiffs have an adequate opportunity to raise their constitutional challenges in state proceedings.

In determining whether the final *Middlesex* factor has been met, the Court returns more thoroughly to *Younger*'s second guiding principle. Beyond its reticence to interfere with state court processes, the *Younger* doctrine also "refus[es] to afford equitable relief when adequate remedies at law exist." *Wallace*, 520 F.2d at 406. The Supreme Court noted that "the teaching of *Gerstein* was that the federal plaintiff must have an opportunity to press his claim in the state courts." *Moore*, 442 U.S. at 432. And in explaining what an opportunity to raise claims in state tribunals requires, the Supreme Court rejected the need to provide plaintiffs with actual hearings, stating that plaintiffs "need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings." *Juidice*, 430 U.S. at 337 (citation omitted). "No more is required to invoke *Younger* abstention." *Id*.

Pennsylvania law provides Plaintiffs with numerous mechanisms for challenging their bail determinations. Any criminal defendant may move for modification of a bail order "at anytime before the preliminary hearing." Pa. R. Crim. P. 529(a). In addition, "[a] bail order may be

21

modified by an issuing authority [who is the MDJ] at the preliminary hearing." *Id.* at 529(b). Defendants may also present their bail challenges to a judge of the Court of Common Pleas "at any time prior to verdict" or "at trial or at a pretrial hearing." *Id.* at 529(c). If the trial court denies a motion for modification of bail, then defendants may seek appellate review "by filing a petition for specialized review in the appellate court that would have jurisdiction over the appeal from the judgment of sentence." Pa. R.A.P. 1610. Given that Pennsylvania law offers multiple avenues for addressing bail challenges, Plaintiffs clearly "had an opportunity to present their federal claims in the state proceedings." *Juidice*, 430 U.S. at 337.

Plaintiffs attempt to discount all the channels available to them for obtaining bail modification in state court by focusing on the timeliness of these remedies. They argue that the invocation of *Younger* "presupposes the opportunity to raise and have *timely* decided by a competent state tribunal the federal issues involved." *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) (emphasis added). Extending this theory to their own case, Plaintiffs say that they lack a meaningful opportunity to raise their federal claims in state court proceedings because they cannot timely contest their bail determinations. Specifically, Plaintiffs claim that preliminary hearings are generally scheduled for two weeks after the preliminary arraignment and are frequently continued, leaving them without access to a hearing. *See* ECF No. 67 at 5; *see also* Pa. R. Crim. P. 540(G)(1). And their ability to file a motion for bail modification at any time, including before the preliminary hearing, is of little help, according to Plaintiffs, because Lancaster County does not usually appoint counsel to indigent defendants until the preliminary hearing, rendering any bail modification petition inaccessible.

In an ideal legal system, perhaps Plaintiffs would receive more expeditious preliminary hearings. But the fact that there may be some delay in getting to such hearings does not mean that

Plaintiffs do not have other options for contesting their bail determinations. As discussed previously, they may move for bail medication "at anytime before the preliminary hearing." *See* Pa. R. Crim. P. 529(a). And, to be clear, Plaintiffs' implication that indigent defendants do not have this right is not accurate; nothing in Pennsylvania law prevents defendants from filing a bail modification motion without attorney representation. *See generally id*. Beyond this remedy, other paths remain available. Plaintiffs can file a bail modification petition with the Court of Common Pleas instead and ultimately appeal any ruling by either an MDJs or common pleas judge. *See id*. at 529(c); Pa. R.A.P. 1610.

More importantly though the *Younger* doctrine does not depend in any way on the timeliness of state remedies. As the Third Circuit explained, "[i]n determining whether a federal plaintiff has an adequate opportunity to raise his constitutional claims . . . we ask whether 'state law *clearly bars* the interposition of the constitutional claims.'" *Gonzalez v. Waterfront Comm'n of New York Harbor*, 755 F.3d 176, 184 (3d Cir. 2014) (quoting *Moore*, 442 U.S. at 425-26) (other citations omitted). There is nothing to show that Pennsylvania "courts are procedurally barred from considering [Plaintiffs'] federal challenges." *Gonzalez*, 755 F.3d at 184. In fact, Pennsylvania's appellate courts have recently recognized that Rule 529 permits criminal defendants to file a "motion for modification of bail" and that they have "specialized review" of bail orders. *Commonwealth v. Saunders*, 335 A.3d 317 (Pa. Super. Ct. 2025). So there is no doubt that Plaintiffs have adequate opportunities to press their claims in state court, which satisfies the final *Middlesex* factor.

Thus, because this case falls within the first *Sprint* category and all three *Middlesex* factors have been met, the Courts holds that *Younger* applies. In essence, the equitable relief that Plaintiffs demand would inevitably lead to federal "intrusion . . . into the daily conduct of state criminal

proceedings," which contravenes the principles of comity that call for respect of state functions. *O'Shea*, 414 U.S. at 502. Further, Pennsylvania courts are well equipped for determining Plaintiffs' bail challenges, completely obviating the need for a federal court to hear these claims. So abstention is appropriate under *Younger*.

## IV.    CONCLUSION

This case implicates two core concepts that underpin our Republic's system of governance: the limited powers granted to the federal government, and its obligation to protect the civil liberties of its people. In this instance, the Court must abstain from inserting itself in Plaintiffs' challenge to the implementation of state bail requirements by state judicial officials in ongoing state criminal prosecutions. Plaintiffs' ask here would necessarily require open-ended federal court oversight of disputed state bail determinations, an area in which the state has a significant interest, and for which its laws provide numerous paths for review. An appropriate order follows.

BY THE COURT:


*John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

24